UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC DOWDY-EL, AVERIS X. WILSON,           Case No. 06-11765
AMIRA SALEM, TOM TRAINI and
ROGER HUNT,                                 Hon. Avern L. Cohn
            Plaintiffs,                     Magistrate Judge David R. Grand

v.

PATRICIA L. CARUSO, MICHAEL MARTIN,
and DAVE BURNETT,

            Defendants.
_____/

### REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [56]

Before the court is the Plaintiffs' Motion for Class Certification [56], which has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiffs' motion be **GRANTED**.

### I. BACKGROUND

Plaintiffs are Muslim[1] inmates housed by the Michigan Department of Corrections ("MDOC") who challenge the defendant prison officials' alleged failure to accommodate their requests to observe three distinct Islamic religious practices: (1) attending *Jum'ah* prayer services; (2) receiving a *halal* diet; and (3) participating in the *Eid ul-Fitr* and *Eid ul-Adha* Feasts (the "*Eid* Feasts").[2] On July 24, 2012, this court issued a Report and Recommendation (the "R&R")

---

[1] This court has recommended that the sole non-Muslim plaintiff's claims be dismissed. Doc. #70 at 2, fn. 1.

[2] Plaintiffs challenge each alleged failure to accommodate under: (1) the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (2) the Free Exercise Clause of the First Amendment of the United States Constitution, (3) the Michigan Constitution's

regarding the parties' cross-motions for summary judgment. Doc. #70. The R&R discussed the factual background behind the Plaintiffs' claims and the Defendants' defenses, R&R at 1-6, and the court incorporates that discussion by reference here. The court will nevertheless briefly describe Plaintiffs' claims as they relate to the instant motion for class certification.

### 1. *Jum'ah* Claims

*Jum'ah* is a weekly congregational prayer service that begins on Fridays at about noon and lasts for approximately one hour. MDOC Policy Directive 05.03.150 (the "Policy Directive") provides in pertinent part:

> V. Staff shall not make special provisions for the observance of religious holidays except as authorized and specifically provided for by Department policy.
>
> * * * *
>
> BB. Prisoners shall not be released from work or school assignments to attend group religious services or activities, consistent with restrictions on attending other personal interest activities. Religious services and activities should be scheduled when the majority of prisoners have leisure time (e.g., evening and weekend hours)…

Policy Directive, ¶¶ V, BB (collectively, the "Work Release Policy" or the "Policy").

Under the Policy, observant Muslim inmates who are assigned to work and/or school duty that conflict with *Jum'ah* services are simply unable to attend those services. The parties agree, however, that Defendants employ an unwritten, un-defined, and "sporadic" "policy of granting permission to attend religious services on a case by case basis." R&R at 4. Plaintiffs request either that they not be assigned to work or school duties that conflict with *Jum'ah*, or that they be freely (as opposed to sporadically) given "call-outs" to attend those services. Defendants argue

---

counterparts to the United States Constitution's Equal Protection Clause and Free Exercise Clause, Article I, §§ 2 and 4, respectively; and (4) the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S .C. § 2000cc *et seq.* ("RLUIPA").

that the Policy is lawful in light of security concerns that would exist if inmates could self-select a portion of their schedules.

This court recommended dismissing Plaintiffs' related constitutional claims. R&R at 29-31, 35-37. However, RLUIPA imposes a greater burden on Defendants than does the First or Fourteenth Amendments, and requires them to show the Work Release Policy is the least restrictive means of addressing their safety concerns. *Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) ("The constitutional protection afforded [to inmates] under § 1983 is less strong" than those afforded under RLUIPA). *See also* R&R at 27. This court found that material questions of fact existed regarding the "least restrictive means" issue, and, as a result, recommended denying summary judgment on the *Jum'ah* RLUIPA claim. R&R at 18-21.

Plaintiffs seek to certify a class comprised of "all current and future Michigan Muslim inmates who desire but have been denied …the ability to participate in *Jum'ah* because of a conflicting work, school or similar detail. [56 at 20].

### 2. Halal Diet Claims

Plaintiffs allege that their faith requires adherence to dietary restrictions that prohibit the consumption of any food that is not "*halal*". Compl., ¶24. In other words, they desire a diet comprised of *halal* meats and/or vegetarian foods that have not been "cross-contaminated" by coming into contact with non-*halal* meats. Defendants contend that they are unable to provide a special *halal* diet due to cost constraints, but claim that they take measures to ensure that cross-contamination does not occur. This court recommended granting Defendants' summary judgment motion as to Plaintiffs' *halal* diet claim under the First Amendment's Free Exercise Clause (and related Michigan constitutional provision), but permitting their other *halal* diet claims to proceed. R&R at 40.

Plaintiffs seek to certify a class comprised of "all current and future Michigan Muslim inmates who desire but have been denied …a halal diet that is free of contamination by foods considered haram," *i.e.*, non-halal meats and/or vegetarian foods that have been "contaminated" by coming into contact with such meats.  [56 at 20].

### 3. *Eid Feast* Claims

Plaintiffs also challenge the Defendants' alleged failure to accommodate their observance of the *Eid* Feasts.  However, after this action was filed, the MDOC issued a Memo which made clear that observant Muslim inmates would be allowed to participate in the *Eid* Feasts.  R&R at 6, 37.  Defendants argued that the Memo rendered Plaintiffs' *Eid* Feast claims moot.  This court found that Plaintiffs' claims were not moot because the Memo's contents had not been sufficiently incorporated into the Policy Directive as other allowable religious observances had been.  R&R at 37-39.  However, recognizing that Defendants do not dispute observant inmates' right to participate in the *Eids*, this court recommended granting summary judgment in Plaintiffs' favor on those claims.  *Id.*

Whether or not this court's recommendation is ultimately adopted by the district court, the class certification question on Plaintiffs' *Eid* feasts claims is clearly moot; if the district court accepts the recommendation, the claims will have been resolved in the Plaintiffs' favor, and if the court rejects the recommendation, the Defendants will have prevailed.  Accordingly, the class certification issue on those claims need not be addressed further.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if:

4

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).

"Although Rule 23(a)(2) refers to common questions of law or fact, in the plural, there need only be one question common to the class-though that question must be a 'common issue the resolution of which will advance the litigation.' Ultimately, the class may only be certified if, "after a rigorous analysis," the district court is satisfied that these prerequisites have been met. The burden is on the plaintiff "to establish his right" to class certification." *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) (citations omitted).

In addition to satisfying the Rule 23(a) criteria, the proposed representative plaintiffs must also meet one of the criteria listed in Rule 23(b). Here, Plaintiffs claim they satisfy Rule 23(b)(2) [56 at 10], which provides that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole…" Fed. R. Civ. P. 23(b)(2).

### III. ANALYSIS

#### A. Rule 23(a)(1) – Numerosity

Defendants do not dispute that Plaintiffs satisfy Rule 23(a)(1)'s numerosity requirement with respect to either of the proposed classes for their *Jum'ah* or *halal* diet claims. Doc. #62 at 2. The court also finds that Plaintiffs easily satisfy this requirement for both sets of claims. Plaintiffs allege (and Defendants do not dispute) that as of December 31, 2009, the MDOC housed

in excess of 1,800 Muslim inmates. *Id.*; Doc. #56 at 12. Plaintiffs have also shown that the each of the religious practices they seek to observe are sufficiently central to their faith that there are likely to be at least many hundreds of Muslim inmates in the proposed classes. Doc. #56 at 12. Such numbers, particularly considering their status as inmates, easily satisfies Rule 23(a)(1)'s numerosity requirement. *See Glover v. Johnson*, 85 F.R.D. 1 (E.D. Mich. 1977); *Johnson v. Martin*, 2002 U.S. Dist. LEXIS 12550 at *13 (W.D. Mich. Apr. 29, 2002); *Roman v. Korson*, 152 F.R.D. 101, 105 (W.D. Mich. 1993) (noting the "modern trend is to require a minimum of between 21 and 40 members" to meet the numerosity requirement).

### B.   Rule 23(a)(2) – Commonality

Rule 23(a)(2)'s "commonality" requirement "deals with shared questions of law or fact," and requires the representative plaintiffs to show that "there are questions of law or fact common to the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998); Fed. R. Civ. P. 23(a)(2). As noted above, there "need only be one question common to the class" for the representative Plaintiffs to satisfy this "commonality" requirement. *Alkire*, 330 F.3d at 820; *In re. Whirlpool Corp. Front-Loading Washer Products*, 678 F.3d 409, 419 (6th Cir. 2012) ("There need only be one question common to the class…") (quoting *Sprague*, 133 F.3d at 397). However, not every "common question" of law or fact will suffice; "[w]hat we are looking for is a common issue the resolution of which will advance the litigation." *Sprague*, 133 F.3d at 397.

"[C]ases involving enforcement of a uniform policy or procedure, including those relating to prisoners, are often approved as class actions because they involved questions of fact and law common to all members." *Johnson,* 2002 U.S. Dist. LEXIS 12550 at *14 *(citing inter alia, Armstrong v. Davis,* 275 F.3d 849, 868-69 (9th Cir. 2001) ("in a civil-rights suit, [] commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the

putative class members…")). *See also Jones v. Goord*, 190 F.R.D. 103, 111 (S.D.N.Y. 1999) ("The requirement that there be common questions of law and fact is satisfied in an action by prison inmates when 'inmates have a common interest in preventing the recurrence of the objectionable conduct.'") (citations omitted). As the court in *Glover* explained:

> Clearly each individual member of the class has a unique situation and has been affected in diverse ways by the alleged discriminatory policy. That there are differences in situation and effect does not preclude a finding by this Court of commonality. That each class member's case is in other ways unique does not affect the commonality of the action, as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation.

*Glover,* 85 F.R.D. at 4-5 (quoting *Sweet v. General tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976)). The court examines each of Plaintiffs' two sets of claims separately in this regard.

### i. *Jum'ah* Claims

Plaintiffs' *Jum'ah* claims present issues common to every prospective class member. The Work Release Policy prohibits inmates from being "released from work or school assignments to attend group religious services or activities, consistent with restrictions on attending other personal interest activities." Policy Directive, ¶BB. Thus, all prospective Plaintiffs who wish to attend *Jum'ah* but who are unable to do so because they have a conflicting work or school assignment, face the same strict impediment to attending those religious services. *Glover,* 85 F.R.D. at 4-5.

As this court found in its R&R, even if the decision on whether to grant any particular accommodation turns on case-by-case analysis, that alone would not resolve the legal issues in this case because the Policy, at least on its face, prevents such accommodations. R&R at 21. The salient question in this case is whether the Work Release Policy is the least restrictive means of addressing the Defendants' security concerns, because with that Policy in place, an inmate may never obtain the individualized case-by-case consideration. R&R at 18-21. Thus, the Policy's

underlying legality is a question that is common to all members of the proposed class, and achieving a final answer to that question will certainly advance this litigation. *Sprague*, 133 F.3d at 397.

Defendants' merged the entirety of their "commonality" and "typicality" arguments into one single paragraph:

> It is the Defendants position that the Plaintiffs cannot satisfy prerequisites 2 and 3 because the various faiths represented by the Plaintiffs it is unclear whether there are questions of law common to all of the potential class members and whether the Plaintiffs' claims are typical of the potential class. The Plaintiffs are members of three different faiths, Sunni Islam (Salem and Traini), the Nation of Islam (Wilson), and the Moorish Science Temple of America (Dowdy-El). While all three of the aforementioned faiths share some common beliefs, in practice, they may have very different belief systems. It is unclear whether the injunctive relief the individual Plaintiffs seek would satisfy the membership of three separate faiths. For example, members of the Nation of Islam (NOI) often choose to follow a diet prescribed by Elijah Muhammad. The diet set forth Elijah Muhammad is far more restrictive than a standard halal diet. For example, NOI members who follow Elijah Muhammad's diet cannot eat meat or potatoes. Consequently, any relief this Court might order with respect to halal diets might not satisfy many members of the NOI. Any relief this Court might order that satisfies mainstream Sunni Muslims might not satisfy Shi'a Muslims, the Nation of Islam, or the Moorish Science Temple of America. Accordingly, the Defendants submit that this Court should deny class certification.

Doc. #62 at 3.

Defendants' vague response does not alter the above analysis. Defendants focused solely on Plaintiffs' *halal* diet claim, and made no specific argument with respect to their *Jum'ah* claims. And, as discussed above, while individual circumstances might be relevant to a case-by-case consideration of accommodation denials, they are irrelevant to the initial question of the Policy's overall legality.

In sum, the Work Release Policy's legality under RLUIPA presents a question of law common to each proposed class member, and Rule 23(a)(2)'s commonality requirement is satisfied. *See Mayweathers v. Newland*, 258 F.3d 930, 933 (9th Cir. 2001) (noting that the district court had certified a class of Muslim inmate plaintiffs who had sought relief similar to what the Plaintiffs seek in this case).

### ii. *Halal* Diet Claims

Because the MDOC has a policy of not providing a *halal* diet to observant Muslim inmates, Doc. #55 at 9, Plaintiffs' claims challenging that policy satisfy Rule 23(a)(2)'s commonality requirement. *Glover,* 85 F.R.D. at 4-5. Here, common questions of both law and fact underscore Plaintiffs' *halal*-diet claims, including: (1) whether Defendants are, in general, legally required to provide inmates with a special *halal* diet under any circumstances; (2) whether, if that question is answered in the affirmative, Defendants have shown that such a requirement ought not to apply with respect to them due to their alleged financial condition; and (3) whether, regardless of the answer to the initial question, Defendants do, in fact, provide a diet that is *halal*-compliant. *See* R&R at 21-26; *Glover,* 85 F.R.D. at 4-5.

As noted above, Defendants' only response to the "commonality" question was to note that the three different forms of Islam practiced by the instant Plaintiffs "***may have*** very different belief systems" and that it was "***unclear*** whether the injunctive relief [requested] would satisfy" their respective faiths. Doc. #62 at 3 (emphasis added). Defendants' assertions are equivocal on their face, and were not supported by references to any record evidence. Instead, Defendants offered an equally unsupported hypothetical regarding the types of foods that are allowable under the different forms of Islam. *Id.* Moreover, even if there are some individual discrepancies in the types of foods that Defendants believe would be allowed under the different forms of Islamic

9

practice, those differences are immaterial here where the proposed class is narrowly defined as including only: "all current and future Michigan Muslim inmates who desire but have been denied …a halal diet that is free of contamination by foods considered haram." Doc. #56 at 20. *See Abdul-Malik v. Coombe*, 1996 WL 706914, at *2 (S.D.N.Y. Dec. 6, 1996) ("Clearly, the determination of whether [RLUIPA's precursor and constitutional provisions] mandate the provision of a Halal diet for Muslim inmates is a question of law common to all potential class members.")

### C. Rule 23(a)(3) – Typicality

In *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007), the Sixth Circuit explained Rule 23(a)(3)'s commonality requirement as follows:

> Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." In *Sprague*, the Court explained that "[t]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." On the other hand, the *Sprague* Court explained, the typicality requirement is not satisfied when a plaintiff can prove his own claim but not "necessarily have proved anybody's else's claim." Lastly, for the district court to conclude that the typicality requirement is satisfied, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law."

Here, again, the court conducts a separate analysis for each of Plaintiffs' two sets of claims.

#### i. *Jum'ah* Claims

In considering whether Plaintiffs have met Rule 23(a)(3)'s "typicality" requirement, it is first helpful to focus on the Defendants' perspective. If Defendants' position is correct, then they could, for no reason other than the verbiage in the Work Release Policy, deny any Muslim

inmate's request for a work/study release so that he could attend *Jum'ah*. In other words, it is the Policy itself which puts **all** inmates' religious-based scheduling requests on equal footing with each other.

Plaintiffs here are challenging the legality of that specific Policy, including the fact that any request to attend *Jum'ah* is entitled to no more consideration than would be an inmate's request to watch a television program. Work Release Policy, ¶BB. As a precursor to success, any aggrieved class member would be required to overcome the Policy's facial ban on religious-based "call-outs." Thus, at least at this stage, the Plaintiffs' claims arise from the same "practice or course of conduct that gives rise to the claims of other class members…" *Beattie*, 511 F.3d at 561. *See also Mayweathers*, 258 F.3d at 933.

### ii    *Halal* Diet Claims

The "typicality" issue in this case is on all fours with the one at issue in *Abdul-Malik*, 1996 WL 706914, at *3. The *Abdul-Malik* court was considering a Muslim plaintiff inmate's motion to certify a class of all "Muslims [who] are now or will be incarcerated in [State of New York correctional facilities" who desire a *halal* diet. *Id.* at *1. The defendant in that case raised almost precisely the same typicality argument that Defendants raise here, *i.e.*, that Plaintiffs "are members of three different faiths" and that "[w]hile all three [] share some common beliefs, in practice they may have very different belief systems. It is unclear whether the injunctive relief the individual Plaintiffs seek would satisfy the membership of three separate faiths." Doc. #62 at 3. The *Abdul-Malik* court resoundingly rejected that argument:

> The typicality requirement is satisfied when each class member's claim arises from the same events as give rise to the named representative's claims and each class member will make the same legal arguments to prove liability. The typicality requirement is not defeated by minor variations in the fact patterns of individual class member's claims.

> The defendant contends that the plaintiff's claims are not typical of the proposed class because there is no evidence in the record that all Muslims follow the same dietary practices as the plaintiff. He points to the fact that members of the Nation of Islam feel that their religion is distinct from other Muslim sects. The defendant does not, however, contend that members of the Nation of Islam would not follow a Halal diet. Moreover, the defendant does not dispute that a Halal diet is a known dietary practice….the speculation that some Muslim sects may impose stricter dietary restrictions than those contained in a Halal diet does not render plaintiff atypical of other Muslim inmates.

*Abdul-Malik*, at *3.

The same rationale compels a finding that Plaintiffs here satisfy Rule 23(a)(3)'s "typicality" requirement. Plaintiffs have narrowly defined a proposed class comprised of "all current and future Michigan Muslim inmates who desire but have been denied …a halal diet that is free of contamination by foods considered haram." Regardless of the minor dietary differences identified by Defendants (which differences were unsupported, speculative, and lacking in relevance[3]), the class members' claims arise from the same "practice or course of conduct that gives rise to the claims of other class members…" – the MDOC's policy of not providing *halal* meals to its Muslim inmates. *Beattie*, 511 F.3d at 561. *See also Abdul-Malik*, at*3. Accordingly, the typicality requirement is met as to the *halal* diet claims.

### D. Rule 23(a)(4) – Fair and Adequate Protection of Class Members' Interests

Rule 23(a)(4) requires that the that "the representative parties will fairly and adequately protect the interests of the class." That requirement has two components: "(1) the representative

---

[3] The only particular dietary difference referenced by Defendants is that Nation of Islam members supposedly do not eat meat or potatoes. Doc. #62 at 3. However, Defendants themselves have taken the position that they meet those inmates' religious dietary needs by providing vegetarian foods that are not contaminated. Thus, unless Defendants are suggesting that the court might order the MDOC to provide those or other inmates with a meat-only or potato-only diet, the Defendants have failed to meaningfully differentiate between the proposed class members' claims in a way that would impact this court's analysis of the typicality question.

must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). There is no dispute that both of those prongs are satisfied here. First, the Defendants do not argue otherwise. Second, the representative Plaintiffs clearly have common interests with the unnamed class members, each of whom (by definition) will be an inmate who desires the accommodations being sought by the current Plaintiffs. Moreover, for the reasons stated above, the claims and issues involved are common and typical to all of the proposed plaintiffs. *Johnson,* 2002 U.S. Dist. LEXIS 12550, at \*25-26. Finally, the representative Plaintiffs have personally experienced the alleged burdens imposed by the restrictions they challenge, have testified, and have vigorously pursued this action over a lengthy period of time through qualified counsel, the Dickinson Wright law firm and the ACLU. They have also engaged experts who have provided cogent expert reports in support of their positions. In sum, there is no dispute that Rule 23(a)(4) is satisfied.

### E. Rule 23(b)(2) is Satisfied

As noted above, in addition to satisfying the Rule 23(a) criteria, representative plaintiffs must also meet one of the criteria listed in Rule 23(b). Here, Plaintiffs claim they satisfy Rule 23(b)(2), which provides that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole…" Fed. R. Civ. P. 23(b)(2). As noted in *Johnson*, 2002 U.S. Dist. LEXIS 12550, at \*28:

> [P]rison section 1983 suits involving an allegedly illegal or unconstitutional prison policy are well situated for certification under Rule 23(b)(2) because the plaintiff classes seek to enjoin the operation of the policy and the grounds for relief depend on the general legality or constitutionality of the policy and on the applicability of common defenses to the entire class.

That is precisely the case here with respect to both Plaintiffs' *Jum'ah* and *halal* diet claims. With respect to each of those claims, the Defendants have adopted a policy – which they believe to be legal – that applies generally to all Muslim inmates seeking the type of relief sought by the Plaintiffs here. Those with a conflicting work or school assignment are prohibited by the Work Release Policy from obtaining a call-out to attend *Jum'ah*, and those seeking a *halal* diet cannot obtain one because the MDOC has a policy of not providing them (Doc. #55 at 9), or at least a professed financial inability to do so. Because Plaintiffs' case as to each claim rises or falls on the general legality of those respective issues, any final injunctive or declaratory relief given to them will necessarily be "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Accordingly, Plaintiffs here satisfy Rule 23(b)(2).

**IV.    CONCLUSION**

For the foregoing reasons, the court **RECOMMENDS** that Representative Plaintiffs' Motion for Class Certification [56] be **GRANTED**.


Dated: August 15, 2012                                       s/David R. Grand
Ann Arbor, Michigan                                          DAVID R. GRAND
                                                             United States Magistrate Judge


**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431

F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 15, 2012.

                                     s/Felicia M. Moses
                                     FELICIA M. MOSES
                                     Case Manager